IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TAMMY WILHITE,<br><br>                    Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Defendant. | CV 19-102-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Tammy Wilhite ("Wilhite") brings this action against the United States alleging claims for wrongful termination and intentional infliction of emotional distress following her termination from the Awe Kualawaache Care Center ("Care Center") where she worked as a registered nurse. (Doc. 1.)

Presently before the Court is the United States' Motion to Dismiss. (Doc. 5.) The motion is fully briefed and ripe for the Court's review. (Docs. 6, 13, 14.)

Having considered the parties' submissions, the Court finds the United States' Motion to Dismiss should be **GRANTED** in part, and **DENIED** in part.

/ / /

/ / /

/ / /

1

## I.  BACKGROUND[1]

Wilhite was employed as a registered nurse at the Care Center in Crow Agency, Montana.  The United States Department of Health and Human Services contracts with the Crow Tribe to run the Care Center.

While working at the Care Center, a patient told Wilhite that he had been molested while being transported.  Wilhite contends the patient also disclosed the incident to other persons working in occupational therapy at the Care Center. Wilhite believes the actions of the person who allegedly molested the patient could be a felony offense under 18 U.S.C. § 2242.

Wilhite reported the incident to her immediate supervisor, Carla Catolster, who was Director of Nursing at the Care Center.  Wilhite believes other mandatory reporters also reported the incident to Catolster.

Wilhite claims Catolster told other staff not to tell anyone about the incident, in order to prevent or delay staff from reporting a potential federal offense to law enforcement.  An employee of the Care Center also threatened the patient with eviction if he made further reports of the incident.

When it appeared that no action was being taken, Wilhite reported the

---

[1] For the purposes of this motion, the Court accepts as true the allegations contained in Wilhite's Complaint.  *Wyler Summit P'ship v. Turner Broadcasting Sys, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

incident to law enforcement.  The Montana Department of Public Health and
Human Services conducted an investigation in March 2018, and the Centers for
Medicare and Medicaid Services made a report substantiating the allegations of
patient abuse.  The report was made available to Catolster on March 21, 2018.  The
patient died on that same date.

As a benefit of her employment, Wilhite was provided housing in an
apartment.  After being told of the results of the investigation, however, Catolster
informed Wilhite's landlord on March 21, 2018 that she was no longer employed
by the Care Center and directed the landlord to lock Wilhite out of her apartment.
The landlord did as directed, but allowed Wilhite to retrieve her personal
belongings and her car.  At the time, Wilhite was not informed that her
employment had been terminated.

Wilhite continued to work at the Care Center until she was summoned to a
board meeting on March 29, 2018.  The board members present at the meeting
were Paul Littlelight, Henry Pretty on Top, Lana Three Irons, and Shannon
Bradley (the "Directors").  Wilhite alleges the Directors conspired to terminate her
employment when she appeared for the meeting.

Wilhite was, in fact, terminated at the meeting.  The stated reason was that
she had a gun in her car.  Wilhite alleges Defendants did not find a gun in her car;
but even if she had a gun in her car, there was no policy forbidding employees

3

from having weapons in their vehicles.  Wilhite asserts the real reason she was

terminated was because she reported patient abuse to law enforcement.  Plaintiff

also alleges the board did not follow its own written personnel policies for

terminating an employee.

On October 7, 2019, Wilhite filed this lawsuit.  (Doc. 1).  The United States

argues Wilhite fails to state a claim upon which relief can be granted because her

wrongful termination claim is not cognizable under the Federal Tort Claims Act,

28 U.S.C. § 2679 ("FTCA"), or alternatively falls within the discretionary function

exception to the FTCA.  The United States further contends Montana law does not

permit a plaintiff to recover emotional damages in connection with a wrongful

discharge claim.

## II.   ANALYSIS

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks

a cognizable legal theory or (2) fails to allege sufficient facts to support a

cognizable legal theory."  *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013)

(quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.

2008)).  The Court's standard of review under Rule 12(b)(6) is informed by Rule

8(a)(2), which requires that a pleading contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S.

662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint.  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  A court considering a Rule 12(b)(6) motion must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party.  *Wyler Summit P'ship*, 135 F.3d at 661.

### A.    Wrongful Termination

The United States, as a sovereign, is immune from suit unless it has expressly waived its immunity and consented to suit.  *United States v. Shaw*, 309 U.S. 495, 500-501 (1940); *FDIC v. Meyer*, 510 U.S. 471 (1994).  The existence of such consent is a prerequisite for jurisdiction.  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

In this case, Wilhite relies on the FTCA for the requisite waiver of sovereign immunity and grant of jurisdiction in this Court.  The FTCA waives sovereign immunity for certain torts claims, and provides "[t]he United States shall be liable .

5

. . in the same manner and to the same extent as a private individual under like circumstances . . . ."  28 U.S.C. § 2674.  The FTCA also grants exclusive jurisdiction of such claims in federal district court, providing that "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . , for injury . . . caused by the negligent or wrongful act or omission of any employee . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  The United States Supreme Court has interpreted the "law of the place," in Section 1346(b), as referring to the law of the state where the act or omission occurred.  *FDIC v. Meyer*, 510 U.S. 471, 478 (1994).

The United States first contends wrongful termination is a statutory cause of action in Montana, and therefore, falls outside the FTCA's limited waiver of sovereign immunity for tort claims.  But there is nothing in the FTCA which limits the government's waiver of sovereign immunity to common law torts, as opposed to remedies created by statute.  The FTCA specifically covers "negligent or wrongful" acts or omissions, and it has been interpreted to encompass both common law and statutory torts.  *Waters v. United States*, 812 F.Supp. 166, 169 (N.D. Cal. 1993) (stating the "FTCA would cover torts which are both intentional

6

and statutory").  *See also Plater v. United States*, 359 F.Supp.3d 930, 939 (C.D.

Cal. 2018); *Doe v. Kelly*, 2017 WL 1487626 (S.D. Cal. April 25, 2017).

     The Montana Wrongful Discharge Employment Act ("WDEA") provides

the exclusive remedy and procedure for actions that were formerly governed by

common-law in Montana.  Mont. Code Ann. §§ 39-2-902, 39-2-913; *Meech v.*

*Hillhaven W., Inc.*, 776 P.2d 488, 490 (Mont. 1989).  Although wrongful

termination is no longer a common-law tort, the WDEA provides a damages

remedy for wrongful conduct in terminating employment.  The WDEA requires a

showing of wrongful conduct (i.e., a wrongful discharge) and permits the recovery

of damages related to the harm caused by such wrongful conduct.  Mont. Code

Ann. §§ 39-2-904; 39-2-905.  Since the United States' liability under the FTCA for

its employees wrongful conduct is the same as a private person under Montana

law, it would appear that claims under the WDEA would fall within the FTCA's

general waiver of sovereign immunity.  *See e.g. Plater*, 359 F.Supp.3d at 939

(finding the FTCA waived sovereign immunity for the plaintiff's state statutory

cause of action because it was "best understood as a statutory tort" since the statute

required a showing of harm and the relief sought related to that harm); BLACKS

LAW DICTIONARY (11th ed. 2019) ("tort, 1. A civil wrong, other than breach of

contract, for which a remedy may be obtained, usu. in the form of damages[.]").

Further, the WDEA provides that "a discharge is *wrongful* [] if it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy."  Mont. Code Ann. § 39-2-904(1)(A) (emphasis added). Because the FTCA applies to claims for "wrongful" acts, Wilhite's WDEA cause of action falls within its scope.

The United States next contends that even if Wilhite's wrongful termination claim is cognizable under the FTCA, it falls within the discretionary function exception to the FTCA.  Wilhite counters that her discharge was not a discretionary act.

The FTCA generally waives the Government's sovereign immunity for tort claims, but provides certain exceptions, including an exception for discretionary functions.  28 U.S.C. § 2680(a).  "When a claim falls within a statutory exception to the FTCA's waiver of sovereign immunity, the court is without subject matter jurisdiction to hear the case."  *Mundy v. United States*, 983 F.2d 950, 952 (9th Cir. 1993).

Under the discretionary function provision of the FTCA, the United States is not liable for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The Government bears the burden to show the

8

discretionary function exception applies. *Kim v. United States*, 940 F.3d 484, 487 (9th Cir. 2019). In order to survive a motion to dismiss, however, the "plaintiff must advance a claim that is facially outside the discretionary function exception." *Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009).

The discretionary function exception is evaluated in two steps. First, the Court must "determine whether the challenged actions involve an 'element of judgment or choice.'" *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (citing *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). If a federal statute, regulation or policy directs "mandatory and specific action, the inquiry comes to an end because there can be no element of discretion when an employee 'has no rightful option but to adhere to the directive.'" *Id.* (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Likewise, where a statute, regulation or policy bars the challenged actions, the discretionary function exception does not apply. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1143 (D.C. Cir. 2015) (stating there is "no difference between a *prescription* by policy that leaves no room for choice and a *proscription* that does the same.").

Second, if the action does involve an element of judgment, then the Court "must consider 'whether that judgment is of the kind that the discretionary function exception was designed to shield,' namely, 'only governmental actions and decisions based on considerations of public policy.'" *Id.* The question at the

9

second step is not whether the discretion was abused, but whether the decision

itself is of the type that the discretionary function was meant to shield.  28 U.S.C. §

2680(a); *Gaubert*, 499 U.S. at 325.

In evaluating the discretionary function exception, courts should not review

the allegations in the complaint at too high of a level of generality.  "The correct

analysis is whether 'the alleged *tortious conduct* is discretionary.'"  *Banneker*

*Ventures*, 798 F.3d at 1143 (citing *Westfall v. Erwin*, 484 U.S. 292, 296 (1988)

(emphasis in original)).  *See also Limone v. United States*, 579 F.3d 79, 101 (1st

Cir. 2009) ("Viewed from 50,000 feet, virtually any action can be characterized as

discretionary.  But the discretionary function exception requires that an inquiring

court focus on the specific conduct at issue.").

Here, the challenged conduct is the Directors' decision to terminate Wilhite

in retaliation for reporting an incident of patient abuse to law enforcement.  Wilhite

has not pointed to any federal statute, regulation or policy that specifically

prescribed a course of action the Directors had to follow with regard to the hiring,

training, supervision or discharge of employees at the Care Center.[2]  Rather,

---

[2] In the Complaint, Wilhite alleges "[t]he Board did not follow its own written
personnel policies for terminating an employee's employment."  (Doc. 1 at ¶ 18.)
Wilhite does not, however, cite any federal authority which would make the
Board's personnel policies obligatory and non-discretionary.  Generally, a Tribe's
"internal codes and policies do not represent federal law and cannot, therefore,
waive the federal government's immunity from suit."  *Dahlstrom v. United States*,
2018 WL 1046829, *3 (W.D. Wash. Feb. 26, 2018).  *See also Big Owl v. United*

Wilhite points to 18 U.S.C. § 1513(e),[3] which makes it a federal crime to retaliate

against a person for reporting a federal offense to law enforcement.  Wilhite

alleges the underlying incident of patient abuse could be a federal felony offense

under 18 U.S.C. § 2242.[4]  She further alleges that she reported the incident to law

enforcement, and that she was terminated in retaliation for doing so.  Wilhite

---

*States*, 961 F. Supp. 1304, 1308 (D. S.D. 1997) (holding a tribal school board's
staff handbook did not rise to the level of a federal statute, regulation or policy, but
rather the handbook served "merely as a guide to be followed at the discretion of
the Board").

[3] 18 U.S.C. § 1513(e) provides:

> Whoever knowingly, with the intent to retaliate, takes any action
> harmful to any person, including interference with the lawful
> employment or livelihood of any person, for providing to a law
> enforcement officer any truthful information relating to the
> commission or possible commission of any Federal offense, shall be
> fined under this title or imprisoned not more than 10 years, or both.

[4] 18 U.S.C. §2242 provides:

> Whoever, in the special maritime and territorial jurisdiction of the
> United States . . . knowingly--
> (1) causes another person to engage in a sexual act by threatening or
> placing that other person in fear (other than by threatening or placing
> that other person in fear that any person will be subjected to death,
> serious bodily injury, or kidnapping); or
> (2) engages in a sexual act with another person if that other person is-
> > (A) incapable of appraising the nature of the conduct; or
> > (B) physically incapable of declining participation in, or
> > communicating unwillingness to engage in, that sexual act;
> or attempts to do so, shall be fined under this title and imprisoned for
> any term of years or for life.

therefore concludes the Directors lacked discretion to fire her because doing so violated federal law.

"In general, governmental conduct cannot be discretionary if it violates a legal mandate." *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000). Rather, the "discretionary function exception applies only to conduct that involves the *permissible* exercise of policy judgment." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 539 (1988) (emphasis added). As such, a governmental decision to commit an illegal act is not shielded by the discretionary function exception. *See e.g. Cruikshank v. United States*, 431 F.Supp. 1355, 1359 (D. Haw. 1977) (discretionary function exception did not apply to the CIA's decision to illegally open the plaintiff's mail); *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988) ("[C]onduct cannot be discretionary if it violates the Constitution, a statute, or an applicable regulation."); *Doe v. Federal Democratic Republic of Ethiopia*, 189 F.Supp.3d 6, 26 (D. D.C. 2016) (noting the discretionary function exception "does not apply to illegal acts"); *Spotts v. United States*, 613 F.3d 559, 567 (5th Cir. 2010) ("[T]he discretionary function does not apply if the challenged actions in fact violated a federal statute, regulation, or policy."); *Letelier v. Republic of Chile*, 488 F.Supp. 665, 673 (D. D.C. 1980) ("As it has been recognized, there is no discretion to commit, or to have one's officers or agents commit, an illegal act."); *Al-Kidd v. Gonzales*, 2012 WL 4470782, *2 (D. Idaho

12

Sept. 27, 2012) (stating "if an officer violates the constitution or a statue during his or her investigation, that action is not protected by the discretionary function exception.").

Although courts generally hold employment decisions related to hiring and firing involve policy judgments that fall within the discretionary function exception, *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000), the Court finds the specific conduct at issue here falls outside the exception. Wilhite alleges the Directors' retaliated against her for reporting a potential federal crime – the sexual abuse of a patient – to law enforcement. It is a federal offense to retaliate against a person "for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense." 18 U.S.C. § 1513(e). As such, taking Wilhite's allegations as true, as the Court must at this stage of the litigation, the Court finds Wilhite has alleged a claim which is facially outside the discretionary function exception.

The Court, therefore, recommends that the United States' Motion to Dismiss be denied as to Count I.

**B.     Intentional Infliction of Emotional Distress**

The United States asserts Wilhite's claim for intentional infliction of emotional distress is inextricably intertwined with and based upon her termination, and is therefore precluded under Montana law. Wilhite argues her claim is not

13

barred because she suffered emotional distress before her employment was officially terminated.

Under Montana law, the WDEA is the "exclusive remedy for a wrongful discharge from employment." *Kulm v. Montana State University-Bozeman*, 948 P.2d 243, 245 (Mont. 1997); Mont Code Ann. §§ 39-2-902; 39-2-913. The WDEA expressly precludes any claim for damages arising out of a wrongful discharge for "pain and suffering, emotional distress, compensatory damages, punitive damages, or any other form of damages." Mont. Code Ann. § 39-2-905(3); *See also Dagel v. City of Great Falls*, 819 P.2d 186, 194 (Mont. 1991) (holding plaintiff could not bring a claim for intentional infliction of emotional distress under the WDEA).

Claims that are unrelated to an alleged wrongful discharge are not preempted, however. *Beasley v. Semitool, Inc.*, 853 P.2d 84, 86-87 (Mont. 1993). Only claims that are "inextricably intertwined with the discharge and whose claims for damages are caused by an asserted wrongful discharge" are barred. *Daniels v. YRC, Inc.*, 2013 WL 449300, *1 (D. Mont. Feb. 5, 2013); *Beasley*, 853 P.2d at 87. In other words, a cause of action is not precluded if it "could have been brought regardless of whether [the plaintiff] were still employed." *Kulm*, 948 P.2d at 246.

Here, Wilhite claims she suffered emotional distress "after being terminated for reporting patient abuse." (Doc. 1 at ¶ 36.) This aspect of her emotional distress claim is clearly barred by the WDEA, and should be dismissed.

14

But Wilhite also claims she suffered emotional distress before her employment was terminated as a result of being locked out of her apartment. (Doc. 1 at ¶ 37.)  Wilhite alleges Catolster directed that she be locked out of her apartment and denied access to her belongings on March 21, 2018.  (*Id.* at ¶14.) Wilhite then continued to work at the Care Center for another week, until she was terminated by the Board of Directors on March 29, 2018.  (*Id.* at ¶¶ 16-17.) Wilhite was provided the apartment as a fringe benefit of her employment (*Id.* at ¶ 6), and was deprived of that benefit prior to her termination.  As such, Wilhite has alleged a cognizable claim for emotional distress that was not contingent upon her termination, however limited that claim may be.  *See e.g. Beasley*, 853 P.2d at 87 (finding the plaintiff's contract-based claims based on his employer's failure to provide stock options, bonuses, and other promised benefits were not barred by the WDEA where they occurred prior to and independent of his resignation).

Accordingly, to the extent Wihite's emotional distress claim is based on the loss of her apartment prior to the date she was officially terminated, the claim is sufficiently distinct from her wrongful discharge claim to remain viable.  The Court, therefore, recommends that the United States' Motion to Dismiss Count II based on her claim that she was denied housing and access to her apartment be denied.

/ / /

15

## III.   CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that the United States' Motion to Dismiss (Doc. 5) be **GRANTED** as to Wilhite's claim of intentional infliction of emotional distress based on her termination from employment, but **DENIED** in all other respects.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED.**

DATED this 3rd day of August, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge

16